# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| JEFF MCCAULEY, | Civil No. 09-3183 (JRT/JSM) |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| OCWEN FEDERAL BANK, FSB, and LASALLE NATIONAL BANK, as Trustee, its Successors and Assigns, | |
| Defendants. | |

Graham M. Martin, **MARTIN LEGAL SERVICES,** LLC, 2138 Fairmount Avenue, Saint Paul, MN 55105, for plaintiff.

Gary K. Luloff, **CHESTNUT & CAMBRONNE, P.A.**, 17 Washington Avenue North, Suite 300, Minneapolis, MN 55401, for defendants.

Plaintiff Jeff McCauley resides in a single-family home in Oak Park Heights, Minnesota, and the mortgage agreement for that home was eventually transferred to Ocwen Federal Bank ("Ocwen"), which assigned the mortgage to LaSalle National Bank ("LaSalle") as trustee, care of Ocwen. Ocwen initiated foreclosure proceedings, and LaSalle purchased the home at a Sheriff's Sale. After the redemption period expired, McCauley filed a civil action in state court against Ocwen and LaSalle (collectively, "defendants"), alleging five causes of action and seeking injunctive relief. Defendants timely removed the case to federal court, and McCauley filed a motion for preliminary injunction to enjoin defendants from proceeding with McCauley's eviction. (Docket

No. 4.) Defendants then filed a motion to dismiss. (Docket No. 10.) For the reasons stated below, the Court denies McCauley's motion and grants in part and denies in part defendants' motion.

## BACKGROUND

McCauley's complaint alleges that he built a home in Oak Park Heights and began residing there in July 1989. (Compl. ¶ 6, Notice of Removal Ex. 2, Docket No. 1.) McCauley financed the purchase of the home through Kislak Mortgage, and the U.S. Department of Housing and Urban Development ("HUD") guaranteed the loan. (*Id.* ¶¶ 6, 9.) In 1990, McCauley was diagnosed with terminal cancer and lost his job as a result. (*Id.* ¶ 8.) When he became unable to make his mortgage payments, he contacted HUD and received a Forbearance Agreement, which McCauley executed on or about May 21, 1994. (*Id.* at ¶¶ 9, 11.) Pursuant to the Forbearance Agreement the mortgage was transferred from Kislak Mortgage to HUD. (*Id.* ¶ 10.) McCauley alleges that the Forbearance Agreement provided that the delinquent amount that McCauley owed on the mortgage would remain a part of the outstanding balance on the mortgage, but that the mortgage would not be considered in default in a way that would result in the initiation of foreclosure proceedings. (*Id.* ¶ 9.) McCauley further alleges that "[t]he HUD Forbearance Agreement stated that a sale of the mortgage by HUD will require the new lender to service the loan in a manner similar to HUD's Forbearance Agreement." (*Id.* ¶ 24(a).)

McCauley alleges that after he executed the Forbearance Agreement, he made "regular monthly mortgage payments in the amount he was able," typically $100. (*Id.* ¶ 11.) In 1995, the Forbearance Agreement was modified to require McCauley to pay $400 per month. (*Id.* ¶ 12.) In December 1996, HUD transferred the mortgage to Ocwen. (*Id.* ¶ 13.)

McCauley alleges that at the time HUD transferred the mortgage to Ocwen, McCauley was behind on his mortgage payments by approximately $20,000. (*Id.* ¶ 13.) He further alleges that the assignment from HUD to Ocwen "recited that Ocwen was bound by the terms of the Forbearance Agreement." (*Id.* ¶ 14.)

Soon after Ocwen took over the mortgage, Ocwen sent McCauley a notice of default, claiming that McCauley was $51,297 behind on his mortgage payments. (*Id.* ¶ 15.) The notice of default stated that failure to pay that amount would result in acceleration of the loan and the initiation of foreclosure proceedings. (*Id.*) McCauley wrote to Ocwen informing it of its alleged error, but Ocwen did not respond. (*Id.* ¶ 16.) Ocwen insisted that McCauley make payments in $5000 amounts in order to preclude foreclosure. (*Id.*) McCauley continued to make his monthly payments in accordance with the modified Forbearance Agreement, and also attempted to make the $5000 payments that Ocwen demanded. (*Id.*) McCauley alleges that during the period when Ocwen was threatening foreclosure, "Ocwen continually altered the amount in default on the mortgage, did not credit payments, credited payments late, and/or added excessive fees to balloon the amount Ocwen claimed McCauley owed on [the] mortgage." (*Id.* ¶ 19.) McCauley further alleges that Ocwen reported McCauley's "false default [on the

mortgage] to credit reporting agencies, destroying [McCauley's] credit rating." (*Id.* ¶ 24(d).) On or about July 10, 2007, Ocwen assigned the mortgage to LaSalle as trustee, care of Ocwen. (*Id.* ¶ 17.)

In or around December 2008, Ocwen initiated foreclosure proceedings. (*Id.* ¶ 18.) On or about February 11, 2009, McCauley was served with a notice of pending mortgage foreclosure sale, which stated that the outstanding amount on the mortgage was $173,016. (*Id.* ¶ 21.) On or about March 12, 2009, LaSalle purchased the home for $176,195.34 at a Sheriff's sale. (*Id.* ¶ 22.) After McCauley failed to redeem, LaSalle instituted a forcible detainer action in Washington County. (*Id.* ¶ 23.) A stay of the eviction was scheduled to expire on October 21, 2009. (*Id.* ¶ 31.)

On October 16, 2009, McCauley filed a civil action against Ocwen and LaSalle in state court. (*Id.*) The complaint alleges four causes of action and also seeks injunctive relief, including a temporary restraining order, a temporary injunction, and a permanent injunction. Count A alleges that defendants breached their contract with McCauley by failing to adhere to the terms of the mortgage and by requiring McCauley to make payments that were greater than those required by the Forbearance Agreement. (*Id.* ¶ 24.) Count B alleges intentional infliction of emotional distress. (*Id.* ¶ 27.) Count C alleges unreasonable debt collection practices, including making false reports of delinquent debt to credit reporting agencies, failing to account properly for the HUD Forbearance Agreement, and failing to cooperate with McCauley in allowing him to pay off the debt. (*Id.* ¶ 28.) Count D alleges violations of the federal Fair Debt Collection Practices Act. (*Id.* ¶ 29.) Counts E through H seek a declaratory judgment that the

foreclosure was wrongful and in bad faith, and that McCauley is the current owner of the property, as well as injunctive relief. (*Id.* ¶ 30.)

On November 13, 2009, defendants timely filed a Notice of Removal. (Notice of Removal, Docket No. 1.) Also on November 13, 2009, this Court issued a temporary restraining order enjoining defendants from taking any action to complete the foreclosure, from attempting to or taking possession of the property, and from interfering with McCauley's possession of the property. (Temporary Restraining Order, Docket No. 2.)

On November 20, 2009, McCauley filed a motion for preliminary injunction to prevent and enjoin defendants from proceeding with McCauley's eviction. (Docket No. 4.) On November 23, 2009, defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket No. 10.)

## ANALYSIS

### I. MOTION FOR PRELIMINARY INJUNCTION

Ordinarily the Court would begin its analysis with a discussion of the four factors relevant to a court's evaluation of a motion for preliminary injunction, as set forth in *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). In this case, however, that discussion is unnecessary, because federal law prohibits this Court from granting the injunctive relief McCauley requests.

The Anti-Injunction Act prohibits federal courts from enjoining state court proceedings, except in very limited circumstances. The Anti-Injunction Act states that "[a] court of the United States may not grant an injunction to stay proceedings in a State

court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "The Supreme Court has interpreted the Act as 'an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions' included in the language of the statute." *Canady v. Allstate Ins. Co.*, 282 F.3d 1005, 1013-1014 (8th Cir. 2002) (quoting *Atl. Coast Line R.R. v. Locomotive Eng'rs*, 398 U.S. 281, 286-87 (1970), *abrogation on other grounds as recognized by Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*, 551 F.3d 812, 821-22 (8th Cir. 2009)). "Courts must construe the exceptions to the Anti-Injunction Act narrowly and resolve doubts in favor of letting the state action proceed." *Kan. Pub. Employees Ret. Sys. v. Reimer & Koger Assocs.*, 77 F.3d 1063, 1068 (8th Cir. 1996). A federal court cannot evade the Anti-Injunction Act by enjoining the party who prevailed in state court from availing itself of the benefits of the state court order. *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1035 (8th Cir. 1999), *overruled on other grounds by Exxon Mobil Corp. v. Allapattah Servs. Inc.*, 545 U.S. 546 (2005), *as recognized in Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010, 1027 (D. Minn. 2007).

If this Court were to grant McCauley's motion for preliminary injunction, it would have the effect of a stay of the forcible detainer proceedings that took place in state court. McCauley's complaint concedes that LaSalle purchased the home and that LaSalle then instituted a forcible detainer action against McCauley in state court. (Compl. ¶¶ 22-23.) The Court takes judicial notice of a document entitled "Writ of Recovery of Premises" from Washington County state court, which states that "[o]n October 7, 2009, a judgment

was entered in this court against the defendant," Jeff McCauley. (Writ of Recovery of Premises, Luloff Aff. Ex. C, Docket No. 15.) The document states that LaSalle "is entitled to restitution from the defendant of the" home in Oak Park Heights. (*Id.*)

The Anti-Injunction Act therefore prohibits this Court from granting McCauley's motion for preliminary injunction unless one of the statutory exceptions applies. The only possible exception applicable here is "where [the injunction is] necessary in aid of [the federal court's] jurisdiction."[1] "'Necessary in aid of' means 'necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'" *Versacold USA, Inc. v. Inland Am. Brooklyn Park Atlas, L.L.C.*, No. 09-2669, 2009 U.S. Dist. LEXIS 102060, at *5, 2009 WL 3617544, at *2 (D. Minn. Oct. 29, 2009) (quoting *Atl. Coast Line R.R. Co.*, 398 U.S. at 295). "The Eighth Circuit limits the in-aid-of exception to in rem claims," but McCauley's claim is based on *in personam* jurisdiction and therefore does not fall within that exception. *See id.*

McCauley's request for an injunction prohibiting defendants from proceeding with the eviction is, in effect, an impermissible appeal from the state court's judgment. As the Eighth Circuit has observed, "lower federal courts possess no power whatever to sit in direct review of state court decisions. If [a party is] adversely affected by [a] state court's decision, [the party is] free to seek vindication of its federal right in [state] appellate

---

[1] McCauley has identified no act of Congress that would allow this Court to issue injunctive relief, and there is no federal court judgment to protect or effectuate. *Cf. Krey Packing Co. v. Hamilton*, 572 F.2d 1280, 1282 (8th Cir. 1978) ("Since a federal court has not previously adjudicated this matter, the 'relitigation' exception, related to 'protecting' and 'effectuating' the court's judgment, is not applicable.").

courts and ultimately, if necessary, in [the Supreme] Court." *Krey Packing Co. v. Hamilton*, 572 F.2d 1280, 1283-84 (8th Cir. 1978) (internal quotation marks omitted).

For the foregoing reasons, the Court denies McCauley's motion for preliminary injunction (Docket No. 4) and lifts the Temporary Restraining Order issued on November 13, 2009 (Docket No. 2.)

## II. MOTION TO DISMISS

### A. Standard of Review

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to the non-moving party. *See, e.g.*, *Bhd. of Maint. of Way Employees v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001). To survive a motion to dismiss, however, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)). That is, to avoid dismissal, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and

plausibility," and therefore, must be dismissed. *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

### B.  **Breach of Contract** (Count A)

The complaint alleges that defendants breached their contract with McCauley by failing to "adhere to the terms of transference of the mortgage from HUD to" defendants. (Compl. ¶ 24(b).)  Defendants conclude that "it must be that [McCauley] is asserting that the HUD forbearance agreement is imputed into the Note and Mortgage by operation of the HUD regulations."  (Defs.' Mem. in Supp. of Mot. to Dismiss at 5, Docket No. 11.)  The complaint, however, makes no reference to HUD regulations, and the breach of contract claim appears to be based on the terms of the contract, rather than on any related HUD regulations.  The Court has not identified any language in the HUD regulations that states that the purchaser of a loan may breach the terms of the underlying loan contract.  Therefore the HUD regulations do not preclude McCauley's breach of contract claim.

Defendants further argue that McCauley makes a "legal assertion[] rather than [a] factual allegation[]" when he claims that the Forbearance Agreement required any assignee to service the loan in a manner similar to the HUD Forbearance Agreement.  (*Id.* at 5.)  But the complaint does not make a legal assertion; it states that defendants did not adhere to the terms of the agreement that transferred the mortgage from HUD to defendants.  If that agreement stated that defendants were required to comply with certain terms of the Forbearance Agreement between McCauley and HUD, such as the condition

that McCauley make payments of $400 per month, then it is plausible that defendants breached that agreement by demanding that McCauley make $5000 payments.

McCauley's claim for breach of contract is plausible on its face, and the complaint includes sufficient factual matter that, accepted as true, states a claim to relief. Therefore the Court denies defendants' motion to dismiss Count A of the complaint.

### C. **Intentional Infliction of Emotional Distress** (Count B)

To prevail on a claim for intentional infliction of emotional distress, the claimant "must show [that the defendant's] conduct (1) was extreme and outrageous; (2) was intentional or reckless; (3) caused emotional distress; and that the emotional distress caused by [the defendant] (4) was severe." *Wenigar v. Johnson*, 712 N.W.2d 190, 207 (Minn. Ct. App. 2006). To be actionable, the defendant's conduct "must be so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Id.* (internal quotation marks omitted).

In support of his claim for intentional infliction of emotional distress, McCauley alleges that "[t]he conduct of the Defendants caused emotional distress to Plaintiff, which exacerbated his feelings of vulnerability and lack of safety that had prior to been alleviated by the knowledge that he had a safe home to which he could always retire." (Compl. ¶ 27.) The complaint also alleges that the home "was the first place [McCauley] felt truly safe and comfortable. Mr. McCauley suffered physical, sexual, and emotional abuse as a child, and this home provided him at last with respite from those feelings of vulnerability caused by that abuse." (*Id.* ¶ 7.)

Under Minnesota law, a defendant "may escape liability if the distress is exaggerated in comparison to that which a reasonable man would experience under the circumstances, unless the exaggerated distress results from a particular susceptibility to such distress of which the defendant had knowledge." *Wenigar*, 712 N.W.2d at 208 (internal quotation marks omitted). The complaint implicitly concedes that McCauley's history of abuse as a child caused him to suffer exaggerated distress about the potential loss of his home. The complaint does not allege, however, that defendants had **knowledge** of McCauley's "particular susceptibility" to such exaggerated distress. Therefore, McCauley fails to state a claim for intentional infliction of emotional distress, and the Court grants defendants' motion to dismiss Count B.

### D. **Unreasonable Debt Collection Practices** (Count C)

The specific conduct that McCauley alleges to constitute unreasonable debt collection practices includes

> failing to properly account for the HUD Forbearance Agreement, failing to account properly for forbearance payments, reporting falsely delinquent debt to the credit reporting agencies, continually posting for foreclosure when Plaintiff was trying to pay off the debt according to the Forbearance Agreement in force, and generally failing to cooperate in allowing Plaintiff to pay off the debt.

(Compl. ¶ 28.) The complaint also specifically alleges that "[t]hroughout this process of Ocwen threatening to foreclose and Mr. McCauley notifying them of their errors but paying anyway, Ocwen continually altered the amount in default on the mortgage, did not credit payments, credited payments late, and/or added excessive fees to balloon the amount they claimed Mr. McCauley owed on his mortgage." (*Id.* ¶ 19.)

Minnesota law prohibits a party attempting to collect a debt from "collect[ing] any money from a debtor that is not reported to a creditor." Minn. Stat. § 332.37(17). Refusing to credit payments could violate this provision.

Defendants contend that this claim is "time-barred, as [it] relies on the forbearance agreements entered into between 1996 and 2005, and the failure to entire into another one by early 2006 when Plaintiff ceased paying at all." (Mem. in Supp. at 10, Docket No. 11.) The complaint does not allege, however, when McCauley made his last payment, and therefore the Court, at this stage, cannot rule on this argument.

McCauley has stated a claim for unreasonable debt collection practices, and accordingly the Court denies defendants' motion to dismiss Count C.

### E.  Violation of Fair Debt Collection Practices Act (Count D)

The complaint alleges that defendants' "actions also violated the Federal Fair Debt Collection Practices Act" ("FDCPA"). It does not specifically allege which actions violate the FDCPA, or which provisions of the FDCPA are at issue. McCauley alleges that defendants "destroy[ed] [McCauley's] credit rating" by "reporting [McCauley's] false default to credit reporting agencies." (Compl. ¶ 24(d).) McCauley alleges that he is a party to the Forbearance Agreement, and the Forbearance Agreement expressly states that McCauley's "mortgage . . . is now in default." (Luloff Aff. Ex. A at 2, 5, Docket No. 15.) Therefore, McCauley seems to be precluded from arguing that any alleged statements that defendants made to credit reporting agencies reporting that McCauley was in default were "false." The Court cannot identify any other allegations in the

complaint that could plausibly amount to violations of the FDCPA. The Court therefore grants defendants' motion to dismiss Count D of the complaint.

### F. Declaratory and Injunctive Relief (Counts E-H)

Count E "seeks a declaration that the foreclosure was wrongful and in bad faith, and that [McCauley] is the current owner of the property." (Compl. ¶ 30.) Count F seeks a temporary restraining order to enjoin defendants from proceeding with eviction actions in state court and from "[t]aking any action whatsoever to collect a debt from [McCauley]." (*Id.* ¶¶ 31-32.) Count G requests a temporary injunction "enjoining and restraining Defendants . . . from taking any other action against [McCauley] connected with the subject matter of this suit during the pendency of this suit." (*Id.* ¶ 33.) Count H requests a permanent injunction "enjoining and restraining Defendants . . . from attempting to collect a debt, harass, foreclose, or take any other action against" McCauley. (*Id.* ¶ 34.)

Defendants argue that McCauley's request for declaratory and injunctive relief is "presumably[] a back door and untimely request for the foreclosure to be set aside." (Mem. in Supp. at 10, Docket No. 11.) The Court reiterates that the Anti-Injunction Act prohibits the Court from enjoining the state court proceedings that have concluded that LaSalle is entitled to the property. To the extent that Counts E-H request relief that would interfere with those state court proceedings or the judgment of the state court in the forcible detainer action, or that would constitute an appeal from the judgment of the state court, the Court grants defendants' motion to dismiss those counts. To the extent

that those counts request other relief, the Court denies the motion to dismiss without prejudice.

**ORDER**

Based on the foregoing and all the files, records, and proceedings herein, the Court **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for preliminary injunction [Docket No. 4] is **DENIED.**

2. Defendants' motion to dismiss [Docket No. 10] is **GRANTED in part** and **DENIED in part** as follows:

    a. As to plaintiff's claims for intentional infliction of emotional distress and violation of the Fair Debt Collection Practices Act (Counts B and D), defendants' motion to dismiss is **GRANTED**.

    b. As to plaintiff's claims for declaratory and injunctive relief (Counts E through H), defendants' motion to dismiss is **GRANTED in part and DENIED in part**, as follows:

    1) All requests for relief that would interfere with the state court proceedings or the judgment of the state court in the forcible detainer action, or that would constitute an appeal from the judgment of the state court, are **DISMISSED**, and

    2) With respect to all other requested relief in Counts E through H, the Court **DENIES** the motion to dismiss without prejudice.

      c.      As to plaintiff's claim for breach of contract and unreasonable debt collection practices (Counts A and C), defendants' motion to dismiss is **DENIED**.

**IT IS FURTHER HEREBY ORDERED** that the Temporary Restraining Order [Docket No. 2] be **LIFTED**.

DATED: February 26, 2010  
at Minneapolis, Minnesota.

                                                      s/ *John R. Tunheim*  
                                                      JOHN R. TUNHEIM  
                                                  United States District Judge